### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

BETH HUNTER and MONIQUE PRATTO
n/k/a MONIQUE PRATTO-BRUCE,

        Plaintiffs,

vs.                              No.  CV 98-77 JP/JHG

PLB ENTERPRISES, INC., QUALITY
DINING, INC., BRUEGGER'S FRESH
BAGEL BAKERY, and PATRICK BEATTY,

        Defendants.

### MEMORANDUM OPINION AND ORDER

On October 25, 2000 Defendants Quality Dining, Inc. and Bruegger's Fresh Bagel Bakery (collectively "Bruegger's") filed a Motion For Summary Judgment As To Plaintiffs' State Law Claims (Doc. No. 68).  After carefully considering the pleadings, facts of record, arguments of counsel, and applicable law, I find that the motion for summary judgment is well-taken and should be GRANTED.

My Memorandum Opinion filed October 18, 2000 contains a discussion of summary judgment standards, as well as an extensive recitation of the factual background, briefly summarized here.  Bruegger's is the franchisor and PLB Enterprises, Inc. ("PLB") and Patrick Beatty are the franchisees in a franchise agreement whose purpose was to establish and operate bagel restaurants in New Mexico.  Plaintiffs Beth Hunter and Monique Pratto (now known as Monique Pratto-Bruce) were hired in managerial positions by Defendant Patrick Beatty, the owner of PLB.  Plaintiffs were trained at the corporate headquarters of Bruegger's, and Bruegger's representatives came to Albuquerque to train employees and otherwise assist in the opening of the first store in New Mexico.  Plaintiffs, however, were employees of PLB, not of

Bruegger's.  During the course of their employment Plaintiffs allegedly experienced harassment by Beatty and other employees of PLB.  Both Plaintiffs were fired by Beatty a couple months after filing charges of discrimination with the EEOC.

On October 18, 2000 I granted summary judgment for Bruegger's on Plaintiffs' federal claims under Title VII and the Equal Pay Act because Plaintiffs failed to demonstrate that Bruegger's was "an employer" within the meaning of either of those federal anti-discrimination statutes.  I denied Bruegger's motion for summary judgment as to Plaintiffs' state law claims because the issues were not sufficiently briefed by the parties, and allowed Bruegger's to file a new motion directed to the state law claims.

Bruegger's now seeks summary judgment on Plaintiffs' state law claims for sexual harassment in the workplace (Count II), intentional infliction of emotional distress (Count IV), breach of contract (Count VI), wrongful termination (Count VII), and breach of implied covenant of good faith (Count VIII).

*Count II - Sexual Harassment in the Workplace.*  Bruegger's contends that New Mexico does not recognize an independent tort of sexual harassment.  Under the New Mexico Human Rights Act, NMSA 1978 §  28-1-1 *et seq.* (1969), sexual discrimination in the workplace is prohibited, and a procedure is established for bringing a grievance based on sexual harassment. Id., §§ 28-1-7(A) and -10.  Plaintiffs do not contend that they have engaged the grievance procedure, which is a prerequisite for suit.  Jaramillo v. J.C. Penney Co., 102 N.M. 272, 273, 694 P.2d 528, 529 (1985).  I agree with Defendants that Plaintiffs' sexual harassment claims must be brought under the Human Rights Act, and there is no independent tort of sexual harassment in New Mexico.  Therefore, Count II fails to state a claim for sexual harassment in the workplace

under state law.

　　　*Count IV - Intentional Infliction of Emotional Distress; Count VII - Wrongful*
*Termination.*  The tort of intentional infliction of emotional distress based on alleged sexual
harassment in the workplace is recognized in New Mexico, and it is not barred by a plaintiff's
failure to exhaust her remedies under the New Mexico Human Rights Act grievance procedure.
Phifer v. Herbert, 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct. App. 1993), *overruled on other grounds*
*by* Spectron Dev. Lab. v. Amer. Hollow Boring Co., 1997-NMCA-025, 936 P.2d 852.  The tort
of retaliatory discharge (wrongful termination) may also be based on allegations of sexual
harassment, and is not barred by failure to exhaust administrative remedies under the Act.  Gandy
v. Wal-Mart Stores, Inc., 117 N.M. 441, 444, 872 P.2d 859, 862 (1994).  Bruegger's is not
alleged to have directly participated in any harassment, and Bruegger's was not Plaintiffs'
employer and played no role in their terminations.  Thus, to recover against Bruegger's on either
of these counts, Plaintiffs must rely on a vicarious liability theory.

　　　I have already determined as a matter of law that Bruegger's was not "an employer" of
Plaintiffs under Title VII, using a standard considered more lenient or plaintiff-friendly than that
of common law agency.  Mem. Op. (10/18/00) at 9-17.  Plaintiffs do not argue that there was an
employment relationship between Bruegger's and PLB, or between Bruegger's and Plaintiffs.
Rather, they assert that Bruegger's is vicariously liable in tort for the actions of Beatty under the
doctrine of *respondeat superior* because of an actual or apparent agency between Bruegger's and
PLB.  In New Mexico, the principal/agent concept is considered broader than the
employer/employee concept:

　　　　　An employer-employee relationship is a particular kind of agency relationship

> where the "right of control" exists. "Principal-agent" is the broader concept and "employer-employee" the narrower concept.

Comm. cmt., UJI-Civil 13-403, NMRA 2000. In New Mexico, *respondeat superior* liability can be created by an actual agency relationship between the principal and the tortfeasor, or by an apparent agency relationship implied in law between them. Chevron Oil Co. v. Sutton, 85 N.M. 679, 681-82, 515 P.2d 1283, 1285-86 (1973).

*Actual Agency.* Where an agency relationship exists, and where the principal had the right to control the manner in which the details of the work were to be performed at the time of the incident, the principal may be liable for the torts of its agent that are committed within the course and scope of the agency. Madsen v. Scott, 1999-NMSC-042 ¶ 8, 992 P.2d 268, 270; *see also* UJI-Civil 13-401, NMRA 2000 (agent defined as one who represents principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation); UJI-Civil 13-402, NMRA 2000 (principal liable for acts of agent when agent was acting within scope of agency, and principal had right to control manner in which details of work were to be performed, even though right of control may not have been exercised).

The existence of a franchise relationship alone is insufficient to create a principal-agent relationship. Campos Enters., Inc. v. Edwin K. Williams & Co., 1998-NMCA-131, ¶ 18, 125 N.M. 691, 698, 964 P.2d 855, 862. In finding the lack of an agency relationship, the New Mexico Court of Appeals noted that the franchise agreement specifically stated that the franchisee was an independent contractor, and that the franchisor was not allowed to exert control over day-to-day operations of the franchise. Id. Merely displaying a franchisor's logo, selling the

4

franchisor's products, and accepting the franchisor's credit cards are not sufficient alone to force the franchisor to answer for injuries occurring on the franchise premises.  Shaver v. Bell, 74 N.M. 700, 705-06, 397 P.2d 723, 727-28 (1964).  If a franchisor exercises sufficient control of a franchisee, however, the doctrine of *respondeat superior* is invoked.  Chevron Oil Co. v. Sutton, 85 N.M. at 682, 515 P.2d at 1286.

Two agreements entered into by Bruegger's and Michael Beatty indicate the lack of an agency relationship.  The Shareholder Development Agreement, which granted Michael Beatty the exclusive right to develop Bruegger's bagel restaurants in New Mexico, specifies that Michael Beatty is an independent contractor of Bruegger's rather than an agent or employee.  Def. Ex. 2 at 16.  The Franchise Agreement, which gave Michael Beatty the right to open the first bakery and use the proprietary system and trade secrets associated with Bruegger's Bagels Bakeries, specifies that PLB is an independent contractor of Bruegger's and is not an agent, representative, subsidiary, joint venturer, partner, employee or servant of Bruegger's for any purpose.  Def. Ex. 3 at 30.  It also explicitly makes the franchisee responsible for all employment decisions, including hiring, firing, training, wages, and so forth.  Id. at 7.

It is true that both documents contain provisions for the initial training by Bruegger's of managers and bakers of the first bakery in New Mexico, as well as pre-opening and opening supervision and assistance.  Both Plaintiffs, who were hired as managers, underwent training at Bruegger's corporate headquarters in Vermont, and Bruegger's employees spent a week in New Mexico providing training when the first store opened here.  But beyond that initial training, there is no evidence that Bruegger's maintained any control over or right to control the details of how PLB and Beatty dealt with their employees.

5

Plaintiffs point to other evidence that Bruegger's had the right to control PLB. Bruegger's employed a Western Region area manager who was responsible for inspecting the New Mexico Bruegger's restaurants and commissary to ensure the quality of the products met Bruegger's corporate specifications, although the area manager never actually inspected the New Mexico stores. Quality inspection by Bruegger's was "part of the agreement" with Beatty. Dep. Beatty, Pl. Ex. W at 126. Additionally, Bruegger's hired an outside company to inspect sanitation procedures at the New Mexico stores, and that company conducted a handful of inspections. A different company was hired by Bruegger's to conduct a sanitation inspection of the New Mexico commissary. The commissary did not meet sanitation standards during the inspection, and Plaintiff Hunter was in frequent contact with Bruegger's corporate personnel about improving operations at the commissary. Bruegger's corporate employees were in contact with Plaintiff Hunter occasionally about the first bagel store in New Mexico while Plaintiff Hunter managed it. This evidence has nothing to do with employment matters, and it does not show that Bruegger's exercised control over PLB's operation beyond that necessary to protect its trademark and the quality of the product bearing its name. *See* Ciup v. Chevron U.S.A., Inc., 1996-NMSC-062, ¶ 13, 122 N.M. 537, 541, 928 P.2d 263, 267 ("protecting a trademark does not constitute sufficient control over the gas station's operation . . ." to establish agency relationship between franchisor and franchisee).

Plaintiffs also point to evidence that employees were encouraged to contact "corporate headquarters" if they experienced sexual harassment, but that language was contained in a PLB corporate document, not in a Bruegger's document. When Plaintiff Hunter mentioned the EEOC claim to a Bruegger's corporate representative, that representative said she would discuss the

matter with a lawyer, but she did not go so far as to indicate that Bruegger's would take responsibility for resolving the dispute; indeed, Bruegger's never did get involved in the matter.

There is no evidence that Bruegger's maintained a right to control the actions of the local franchisee with respect to employee relations, or that it exerted any actual control over personnel matters beyond the initial training of Plaintiffs. Thus, there is insufficient evidence of an actual agency relationship between Bruegger's and PLB.

*Apparent Agency.* Plaintiffs argue that Bruegger's allowed PLB to be clothed with apparent authority to operate within Bruegger's standards and according to law.

> The apparent authority of an agent results from statements, conduct, lack of ordinary care, or other manifestation of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority.

Chevron Oil Co. v. Sutton, 85 N.M. at 682, 515 P.2d at 1286. The apparent authority of an agent is determined by the acts of the principal, not by the acts of the purported agent. Id.

To show they justifiably relied on Bruegger's alleged apparent principal-agent relationship to PLB, Plaintiffs refer to PLB's Employee Orientation Handbook, which contains prohibitions against sex discrimination and sexual harassment. Pl. Ex. E at 10. The Handbook also states: "Any employee who is subject to or has knowledge of sexual harassment or intimidation is encouraged to immediately report such harassment or intimidation to their manager *and the corporate headquarters*." Id. at 10-11. (emphasis added). As discussed previously, this is a PLB document, and there is no evidence that Bruegger's had a hand in composing or publishing it. Thus, even if "corporate headquarters" refers to Bruegger's, which is by no means clear, this language does not constitute conduct by Bruegger's manifesting its consent that PLB be viewed by PLB employees as Bruegger's agent. Additionally, there is no evidence that Bruegger's ever

took any action to investigate or remedy any complaints of sex discrimination or sexual harassment by PLB.

Plaintiff Hunter asserts in an affidavit that she had worked for several different franchises, and that based on that experience she believed she could have been terminated by the franchisee if she had incurred the displeasure of the franchisor.  Aff. Hunter (11/10/00) ¶ 10 at 2.  Both Plaintiffs aver that they relied on the reputation of Bruegger's Corporation in accepting employment with PLB.  Aff. Hunter ¶ 4 at 1; Aff. Pratto-Bruce ¶ 4 at 1.  These facts, even if true, do not amount to justifiable reliance on the existence of an agency relationship and do nothing to impose vicarious liability on Bruegger's for Patrick Beatty's alleged acts.

Plaintiffs were employees of the franchisee, not members of the general public.  As managerial employees, Plaintiffs were in a better position than most people to know of the actual relationship between Bruegger's and PLB.  I conclude that Plaintiffs have failed to meet their burden to show a disputed issue of material fact on the issue of apparent agency.

Because Plaintiffs have failed to raise a genuine issue of disputed material fact on the issues of actual agency and of apparent agency, Bruegger's cannot be held vicariously liable and is entitled to summary judgment on the tort claims.

*The Contract Claims:  Counts VI and VIII - Breach of Contract and Breach of Implied Covenant of Good Faith.*  Bruegger's argues that it cannot be liable under either of these counts because there is no evidence that any employment contract, either express or implied, existed between Plaintiffs and Bruegger's.  The undisputed facts reveal that all circumstances surrounding the alleged formation of an employment contract occurred only between Plaintiffs and Beatty and PLB.

Plaintiffs' response simply argues that Plaintiffs have raised genuine issues of material fact with respect to the issue of the existence of an implied contract, but it fails to identify any evidence pointing to a contractual relationship, either express or implied, between Plaintiffs and Bruegger's.  Therefore, summary judgment will be granted on these contract counts.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment as to Plaintiffs' State Law Claims is GRANTED.

_____
CHIEF UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  Elizabeth Stacy Vencill, Albuquerque, N.M.

Counsel for Defendants Quality Dining, Inc. and Bruegger's Bagels:  Richard J. Shane, RILEY, SHANE & HALE, Albuquerque, N.M.

Counsel for Defendants PLB Enterprises, Inc. and Patrick Beatty:  Deborah Wells, KENNEDY, MOULTON & WELLS, Albuquerque, N.M.